[No. 4703.  Decided June 26, 1903.]

W. H. COWLES, *Appellant,* v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *Respondent.*

PRINCIPAL AND SURETY — CONTRACTOR'S BOND — WAIVER OF CONTRACT
CONDITIONS — DISCHARGE OF SURETY.

A guaranty company which, for a compensation, becomes surety upon the bond given by a building contractor for the faithful performance of his contract cannot escape liability by reason of deviations from the exact terms of the contract, where such provisions were waived by the contractor and no damage is shown as resulting to the surety by reason thereof.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge.  Reversed.

*Stephens & Bunn,* for appellant:

The contract under consideration is, in fact, an insurance contract, and should be construed as other insurance contracts are construed. *Remington v. Fidelity & Deposit Co.,* 27 Wash. 435; *People ex rel. Kasson v. Rose,* 174 Ill. 310 (51 N. E. 246, 44 L. R. A. 124); *Shakman v. United States Credit System Co.,* 92 Wis. 366 (66 N. W. 528); *Walker v. Holtzclaw,* 57 S. C. 459 (35 S. E. 754).  If the contract under consideration be an insurance contract,

then the contractor, who was and is a general agent of the insurance company, had a right to waive the provisions of the contract with reference to the changes being ordered in writing, and such waiver is binding upon the insurance company. *Sengfelder v. Mutual Life Ins. Co.,* 5 Wash. 121; *Cole v. Union Central Life Ins. Co.,* 22 Wash. 26 (47 L. R. A. 201). The facts in the case at bar are identical with the cases which hold that where the contract requires certificates in writing before payments are made, if payments are made without the written certificates, but not in excess of amounts that would be paid upon written certificates, the waiver of the written certificates does not release the surety. *Hamilton v. Woodworth,* 42 Pac. 849; *DeMattos v. Jordan,* 15 Wash. 388.

*Danson & Huneke,* for respondent:

Respondent contends that radical departures from the plain provisions of the contract, made without its knowledge or consent, discharge it absolutely from all liability on the bond sued on. *Drumheller v. American Surety Co.,* 30 Wash. 530 (71 Pac. 25); *Burnes Estate v. Fidelity & Deposit Co.,* 70 S. W. 518; *United States v. American Bonding & Trust Co.,* 89 Fed. 925; *United States v. National Surety Co.,* 92 Fed. 549; *Electric Appliance Co. v. U. S. Fidelity & Guaranty Co.,* 85 N. W. 648 (53 L. R. A. 609); *American Surety Co. v. Cement Co.,* 57 Pac. 237; *Bank of Tarboro v. Fidelity & Deposit Co.,* 38 S. E. 908; *March v. Fidelity & Deposit Co.,* 29 Atl. 521. The following are cases in which sureties have been discharged on violations of the contract similar to those in the case at bar: *Chapman v. Eneberg,* 68 S. W. 974; *Stillman v. Wickham,* 76 N. W. 1008; *Simonson v. Grant,* 36 Minn. 439; *First National Bank v. Goodman,* 77 N. W. 756;

*O'Neal v. Kelley,* 47 S. W. 409; *Truckee Lodge v. Wood,*
14 Nev. 293; *Bragg v. Shain,* 49 Cal. 131; *St. Mary College v. Meagher,* 11 S. W. 608; *Weed Sewing Machine Co.
v. Winchell,* 7 N. E. 881.

The opinion of the court was delivered by

DUNBAR, J.—The defendant Creutzer entered into a
contract in writing with appellant, whereby Creutzer
agreed to construct a dwelling for appellant. The contract provided that Creutzer should give a surety bond in
the sum of $3,000 to secure the performance of all the
terms of the contract. Respondent became surety on the
bond so required. Creutzer failed to comply with the contract. Appellant completed the work and brought this
action to recover $3,000, which amount he alleges he paid,
to complete the dwelling in excess of the contract price. At
the close of the evidence on the part of appellant (plaintiff
below), the respondent surety company challenged the sufficiency of the evidence, and moved the court to discharge
the jury from further consideration of the case, and direct
what judgment should be entered, upon the following
grounds:  (1) That the evidence for the plaintiff shows
that there are numerous alterations made in the contract
and in the work, other than upon the written order of the
architect; (2) that the value of these changes and alterations is not computed by the architects, as required by the
contract, and the value thereof either added to or deducted
from the contract price; (3) that the evidence shows that
plaintiff and the contractor, Creutzer, entered into a distinct and separate agreement as to his compensation for
all alterations other and distinct from the provisions of
the contract; (4) that the evidence of the plaintiff shows
that plaintiff released the contractor, Creutzer, from all
liability on this bond; (5) that the evidence shows that,

contrary to the provisions of the bond, plaintiff and the contractor made an agreement whereby certain grading was included and work provided in the contract, and it was not provided for therein; (6) that the evidence of plaintiff shows that a payment, to wit, that of $35, on account of the bond in this case, was made by the plaintiff and certified by the architect as a proper charge under the contract. · The court sustained the motion, on the ground that the changes were not ordered in writing, holding that as against the surety company the parties could not waive the provision of the contract which provided that all changes should be ordered by the architect in writing, and that the provision was manifestly made for the benefit of the surety company. Appellant excepted to the ruling of the court granting the motion and making the order in accordance therewith. The contract is too long to be set forth in detail, but it is the ordinary building contract in its general scope, and the bond is in form the ordinary surety bond given in such cases. The section of the contract which is the subject upon which the main controversy in this case arises is as follows:

"No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architects, and, when so made, the value of the work added or omitted shall be computed by the architects, and the amount so ascertained shall be added to or deducted from the contract price. In case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three disinterested arbitrators; one to be appointed by each of the parties to this contract, and the third by the two thus chosen, the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference."

This provision of the contract was waived by the con-

tractor and the owner and the architect.  Subsequently, however, the architect audited and certified the amount which should be paid for changes, extras and alterations, and it is the contention of the appellant that such an act on the part of the contractor and principal in the bond was binding upon the respondent surety company, and a neglect or a default of any of the requirements of the written order of the architect cannot be taken advantage of by the respondent surety company; that the contractor was the general agent and representative of the surety, to act for it, and to waive, if he saw proper, on behalf of the surety company, anything within the purview of his agency.

There are no material contested questions of fact so far in this case, and its proper determination hinges upon the legal proposition announced above.  It is contended by the appellant that a distinction exists between the liability of a non-compensated surety and that of a compensated surety; that the doctrine of *strictissimi juris,* which has been invoked successfully by accommodation bondsmen, should not apply to parties who furnish bonds for compensation. We have not been able to obtain any light from the cases cited from this court, any further than that they discountenance the old rule that there should be a difference in construction between bonds and other contracts, even in cases where the bonds were given purely as a matter of accommodation.  We think, however, on general authority, that, while this class of suretyships is comparatively new, a distinction has been clearly announced by the courts, and that this character of suretyship is governed by the rules governing insurance contracts.  Guaranty insurance is thus defined by Mr. Frost in his work on The Law of Guaranty Insurance, § 2, as follows: "For purposes of classification and treatment herein, guaranty insurance contracts may be divided into three general classes,—those of fidel-

ity, commercial, and judicial insurance." Commercial insurance is defined as having reference to indemnity agreements issued in the form of insurance bonds or policies, whereby parties to commercial contracts are to a designated extent guarantied against loss by reason of a breach of contractual obligations on the part of the other contracting party. To this class belong policies of contract, credit, and title insurance. Then follows a definition of fidelity insurance and judicial insurance, distinguishing them from commercial insurance. In his criticism of courts which have insisted on following the old rule, the author pertinently remarks:

"It is but natural that courts, so long accustomed to extending the 'rule of favoritism' towards the surety in the old-time private bonds, should be slow to recognize that with the passing away of the reason for the existence of the rule by the advent of the compensated surety, the rule itself should pass away. The contract of guaranty insurance is invariably entered into for a compensation, and usually after the fullest investigation, and frequently under stipulations largely technical in character, based upon written representations relative to the nature and extent of the risk. The policy is written by a company incorporated for the express purpose of furnishing guaranty bonds as a means of revenue to the corporation and its stockholders."

This class of insurance cannot be distinguished in principle from what is called guaranty insurance, where the guaranty company guaranties the honesty and efficiency of employees. Such a bond was construed by this court in *Remington v. Fidelity & Deposit Co.*, 27 Wash. 429 (67 Pac. 989), as follows:

"Bonds of this character are, in their nature, insurance contracts, to indemnify the employer against the dishonesty of employees. They are issued for profit, and the

same rules of construction must apply thereto as apply to other insurance contracts. If, looking at all its provisions, the contract is fairly and reasonably susceptible of two constructions, one favorable and the other unfavorable to the insurance company, the latter, if consistent with the object for which the contract was made, must be adopted, for the reason that the instrument which the court is required to interpret was prepared by the attorneys, officers, or agents of the insurance company;"

citing many cases. As to the right of the parties to the original contract to vary the terms of the contract, see 1 Joyce on Insurance, § 273. Also *Grafton v. Hinkley,* 111 Wis. 46 (86 N. W. 859), where a contract for the construction of a building provided that the contractors should be bound to perform a certain portion of the work, and that they might become bound to perform additional work and to complete the building on the owner's giving a written notice, prior to a certain date, of his election to have such contractors continue the work. The contractors executed a bond for the faithful fulfillment of the contract on which defendants were sureties. The owners served no written notice directing the contractors to continue work, but they did continue, and accepted a parol notice. It was held that the work subsequently done was done under the original contract, and that no new contract was entered into between the parties so as to release the sureties from liability for the contractors' failure to complete the building. The court quoted the following language from *Benjamin v. Hillard,* 23 How. 149:

"It is clear that the mere prolongation of the term of payment of the principal debtor, or of the time for the performance of his duty, will not discharge a surety or guarantor. There must be another contract substituted for the original contract, or some alteration in a point so material as in effect to make a new contract, without the surety's

consent to produce that result. But when the essential features of the contract and its objects are preserved, and the parties, without objection from the surety, and without any legal constraint on themselves, mutually accommodate each other, so as better to arrive at their end, we can find no ground for the surety to complain."

In this case we think it may be well said that no other contract was substituted for the original contract, and that the alterations in the contract were not so material as to make a new contract; but that there was simply an undertaking on the part of the parties to the original contract to mutually accommodate each other; so, applying the language just above quoted, as "better to arrive at their end," the thing provided for in this contract was done, and the divergence from the strict terms of the contract was merely a matter of detail. The agreement for the alterations was made by all the parties who were entitled under the contract to make it. The consent was given by the party who was authorized to give consent; not, it is true, in the form prescribed, viz., in writing, but that goes more to form than to substance, and, in the absence of a showing of some damage, should not be allowed to avoid the contract, or the policy of insurance which became a part of it. The bond is subject to the contract, and was made after the contract. It is the contract instead of the bond which is primarily to be construed, and the construction of the contract cannot be affected by the fact that a bond is given for its performance. It must be construed with reference to the gathered intention of the parties to the contract, and whatever is binding upon them is binding upon the surety, who becomes a party to the contract, identified with the contractor.

In *Smith v. Molleson,* 148 N. Y. 241 (42 N. E. 669), it was held that, where a building contract provided that

plaintiff was to make payments to the contractors upon certificates furnished by plaintiff's superintendent, the mere fact that such payments were made without such certificates was not such a departure as would relieve the contractor's sureties from liability, where they were no greater in amount than they would have been if such estimates had been exacted by plaintiff; which is a case, we think, exactly in point with the case at bar. That case went further than it is necessary to go to reverse the judgment in this case, and held that a surety on a contractor's bond was not released by reason of the fact that, after the contractors failed to complete the work and plaintiff gave the notice required by the contract in order to terminate it, he subsequently recalled the notice and allowed the contractor to proceed with the work, during which time the loss for which the surety was held liable occurred. It is true that there is a conflict of authority on this proposition, but we are inclined to follow the authorities cited, and hold that this guaranty company, being a company which is doing business for compensation, ought to be bound by the law governing fidelity guaranty companies and insurance contracts. It not appearing that any damage was done by the slight variance in the terms of the contract, or that any collusion or fraud was attempted on the part of the contractor and the owner, we conclude that the court erred in sustaining the motion challenging the sufficiency of the testimony. The same reasoning will apply to the other grounds of the motion.

The judgment will be reversed, and the lower court instructed to proceed with the trial of the cause.

FULLERTON, C. J., and MOUNT, HADLEY and ANDERS, JJ., concur.