Spear, J.
By the bill of exceptions it appears that at the trial the plaintiff introduced in evidence the application and the bond. It was there *97 upon admitted by the parties that prior to June 16, 1904, defendant notified the Company that he did not desire a renewal of the bond; that the defendant was and still is colonel of the second regiment, Ohio National' Guards, and that he has given no bond since the giving of the bond in question; that his term of office has been continuous, and that the defendant is required by the laws of Ohio to give bond to the state for the .faithful performance of his duties. No other or further evidence was offered.
One of the grounds for new trial was that the finding and judgment of the justice was against the weight of the evidence; but the record presents simply a question of law, and no duty of weighing evidence devolved upon the circuit court. Nor are we here called upon to give construction to the statute of the state with reference to the duties of a colonel of an Ohio regiment with respect to the property of the state, or otherwise, or his duty with respect to the giving of a bond of the character here shown, the admission of the record being that such officer was, by the laws of the state, required to give bond for the faithful performance of his duties; and no further reference to the statute is here necessary, except to say that the claim is made by plaintiff in error that the statute does not give to the colonel of a regiment the custody or control of the property of the state enumerated in the bond, nor of the public funds therein mentioned, and that the bond in these respects was prepared under a misapprehension of -the Company’s real liability with respect to the official conduct and responsibility *98 of the officer; and while the statute requires some sort of a bond of the colonel of a regiment, it does not require the character of bond imposed by the Company on the officer in this instance. Because of this error, it is insisted, the premium required is far in excess of an amount adequate to insuré the actual risk incurred; and this fact may account for the officer’s disinclination to renew the bond.
The question presented, therefore, is: What is the legal effect of the bond, taken in connection with the application, each paper being an essential part of the transaction between the parties?. Both having been introduced in evidence by the Company, we are relieved of consideration of the query, which might otherwise arise, whether or not the application is part of the bond, for the act of the Company in basing its right of recovery in part upon that instrument, incorporates it for all the purposes of the case. As tersely stated by counsel for the defendant in error, the concrete question is: Is the plaintiff in error liable to pay a premium at the end of the first year, if he continues in office and gives no other bond, or is he absolved from such payment on giving notice, before the expiration of the year, that he does not desire a renewal of the bond? The justice and the common pleas answered that he was not so liable; the circuit court answered that he was. The contention of counsel in support of the judgment of the circuit court is, in brief, that this being a surety bond guaranteeing the faithful discharge of his duties by an officer, of necessity must be coextensive with the duration of such office. Hence, *99 as Colonel Bryant has been, and'still remains such officer, the Company is bound to the state to make good its guaranty, and this continuing obligation implies necessarily the yearly payment of the premium by the officer; otherwise the Company would be subject to loss without corresponding consideration or benefit accruing to it. As a proposition at large, this statement will be assented to, because if the contract, when properly construed, imposes a continuing liability, the duty to pay premiums would seem to follow. But the question remains, What is the proper construction of this contract? And first, what is the nature of the contract? Is it one simply of suretyship, one of those known as voluntary contracts, or is it rather one of the class issued for a money consideration and because of a desire for pecuniary gain? If the former, then it is one wherein the surety is regarded as a favorite of the law, and all doubtful questions to be resolved in his favor; if the latter, then he is regarded as an insurer, whose contract, being drawn by the surety himself, and for a money consideration, is, if ambiguity exists in the language, to be resolved most strongly against the surety. Supreme Catholic Knights of America v. Fidelity & Casualty Co., 11 C. C. A., 96; Mechanic's Savings Bank & Trust Co. v. Guarantee Co., 68 Fed. Rep., 459; Cowles v. U. S. Fidelity & Guaranty Co., 32 Wash., 120. Manifestly, the simple fact that a premium is paid by the officer establishes beyond question that the contract does not belong to the former class.
Coming now to an examination of the contract — the application for the bond and the bond *100 itself — we find that the applicant, in consideration of the issuing of the bond, agrees to pay the Company an annual premium in advance of twelve and three dollars (though why the latter sum is named does not appear), and binds himself, his heirs, etc., to indemnify the Company against all loss, etc., resulting from his default, etc., which the Company may sustain by reason of having executed said bond, or any renezval or continuation thereof. The application contains this further significant clause. To the question to be answered by the applicant respecting the duration of the bond, “How long to run?” the answer is, “Indefinitely, one year at a time, renewed.” And the character of the risk, as given' in the application, is: “Faithfully discharge duties of office of colonel of 2d Infantry, O. N. G.” No other clause of the application in any way qualifies these statements. The bond is as follows:
“Know all men by these presents: That we, Edward S. Bryant, as principal, and The American Bonding Company, of Baltimore, as sureties, are held and firmly bound unto the State of Ohio, in the penal sum of four thousand dollars ($4,-000.00), for the payment of which, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors and administrators firmly by these presents. Sealed with our seals, and dated this 16th day of June, 1903.
“The condition of the above obligation is such, That, whereas, the said Edward S. Bryant, who is commandant of 2d Infantry, Ohio National Guard, has, as commandant of said regiment, been intrusted with property of the State of Ohio, *101 including all ordnance stores, clothing, camp and garrison equipage, in possession of said organiza•tion, together with public funds coming into his hands as such officer, arid for such state property and funds as may hereafter be issued or placed in his charge as said commanding officer. Now, if the said property or public funds, or either, shall be delivered to the said Edward S. Bryant, and the same shall be safely kept and at all times in readiness for immediate úse, in a place appropriate for that purpose, and no part of the said ■ public property permitted to be used or taken from such place of deposit for any other purpose than for the use and benefit of such organization or other lawful public service; and if said property and funds shall be turned over to his successor in office (first causing new bonds to be executed by his successor, to the acceptance of the adjutant-general), or shall be returned to the state 'in good condition, and shall at all times be subject to the orders of the governor of Ohio, then this obligation shall be void; otherwise to be and remain in full force and virtue in law.
“Edward S. Bryant. (Seal.)
“American Bonding Companv of Baltimore.
“(Seal.)”
The bond was deposited with the adjutant-general of the state.
It will be noted that there is no definite term stated for the duration or life of the obligation. That feature is left entirely to inference. It therefore cannot be determined in this case, except by reference to the application. There are three parties to the contract — the applicant, called in legal *102 parlance the “risk”; the state and the Company. The consideration moving to the Company from the “risk” is the annual premium-to be paid. The bas'is of the right of the state under the contract might rest upon the principle of a contract made for its benefit by another, which it has accepted; but it can also rest upon the further consideration of the employment by it of the officer, such employment giving also to the state the control of the conduct of the officer. The state, under these facts, being a party to the contract, reaping advantage from it, should be held to have had knowledge of the entire contract, and to have accepted the indemnity subject to any infirmities attaching to the transaction. In other words, it would take cum onere. . Then what follows ? The applicant, the “risk,” could not be heard to claim that the bond would remain in force after his refusal to pay the premium, and it is difficult to see how the beneficiary, the state, could successfully make that claim. One thing is certain: The contract is, as to duration, at least ambiguous. The bond contains no express declaration on the subject, and the application, as hereinbefore recited, justifies the understanding by the applicant that its continuance depended upon a'renewal at the end of the year by the payment of the annual premium; and it is hardly conceivable that the Company, when it accepted the application and issued the bond, in good faith supposed that it was to be bound during all the years that the officer might serve as colonel, when at the same time the annual premiums, the basis of its contract, were not being paid, and that its only recourse *103 would be to resort to an action to recover. The contract is silent as to the party who may exercise the option to continue or terminate the contract; but clearly, if such right belongs with'anyone, it must belong to the one who has procured the contract and is obliged to pay the premiums.
It is not necessary in this case to carry the rule respecting insurance contracts as far as it has been held in many reported cases. It is sufficient to apply to the contract the modified rule, clearly recognized in this state, viz.: that where clauses of such a contract are susceptible of two interpretations, which seem equally fair, that should be preferred which is least favorable to the company; but, like other contracts, they should receive a reasonable construction in order to carry out the presumed intention of the parties as expressed by the language used.
We are of opinion, therefore, • that a bond of this character, indefinite * as to duration, will, standing alone, be held to remain in force during the incumbency of the officer on his present term, and the officer will remain liable for the payment of annual premiums so long as liability to the state on the bond continues. But where the application has beeri made a part of the bond, as in this case, and its language taken in connection with that of the bond imports that while the bond may run indefinitely, but one year at a time, and continued providing the annual premium is paid, the contract should be regarded as continuing only upon the condition of mutual assent, and if such assent is not had, the officer will not be liable for the premiums. And, further, that in case the officer *104 refuses to assent to a continuance of the contract, liability for future conduct of the officer does not attach.
These conclusions require that the judgment of the circuit court should be reversed and the judgment of the common pleas affirmed.

Reversed.

Shaucic, C. ]., Price, Crew, Summers and Davis, JJ., concur.