[No. 7284.    Decided March 17, 1909.]

TITLE GUARANTY & TRUST COMPANY OF SCRANTON, PENN-
SYLVANIA, *Appellant*, v. DAVID A. MURPHY *et al.*,
*Respondents.*[1]

INDEMNITY — BONDS — BUILDING CONTRACTS — DEFAULT OF CON-
TRACTOR—COMPLETION OF BUILDING BY OWNER—LIABILITY. Indemni-
tors, who give a bond to a surety company to indemnify it against
loss upon a contractor's bond guaranteeing the construction of a
building contract, are liable over to the surety company for the
amount it was compelled by judgment to pay on default of the con-
tractor, where the owner, under the terms of the building contract,
took possession and completed the building, putting another in
charge of the construction without withholding the contract price
until completion, although the indemnitors were not parties to
agreements made with the surety company consenting to that ar-
rangement; since the contract gave the owner the right to so do
without such consent, the two bonds, the contract, and the plans
and specifications definitely referring to each other and being all
one transaction, and authorizing all that the owner did to complete
the building himself.

[1]Reported in 100 Pac. 315.

SAME. In such a case, the indemnitors are not discharged because the building, which was to be a "brick veneer," was referred to in the indemnitor's bond as a "two-story frame dwelling," it being the same building described in the contract, and properly described either way.

Appeal from a judgment of the superior court for King county, Tallman, J., entered September 25, 1907, upon findings in favor of the defendants, in an action upon an indemnity bond, after a trial before the court without a jury. Reversed.

*Graves, Palmer & Murphy*, for appellant.

*Farrell, Kane & Stratton*, for respondent Sullivan.

MOUNT, J.—This action was brought by the plaintiff to recover upon an indemnity bond. Judgment was rendered in favor of the defendants in the court below, and the plaintiff appeals.

It appears that on or about September 26, 1904, one E. G. Bort, a builder, entered into a contract to furnish materials and construct a two-story dwelling house, in the city of Seattle, for Mrs. Emily Smith, for a consideration of $4,400. Before entering into the contract Mrs. Smith required of the contractor a surety company's bond in the sum of $2,000, conditioned that Mr. Bort would perform the contract. The Title Guaranty & Trust Company, for a consideration, furnished the bond, but before executing the same that company required an indemnifying bond, which was executed by the respondents as uncompensated sureties.

During the construction of the building, the contractor, Mr. Bort, became financially embarrassed, and neglected to pay certain bills for materials used in the building. Thereupon the materialmen filed liens and proceeded to foreclose the same against the building. These actions were brought against Mrs. Smith and her husband, who tendered the defense thereof to the Title Guaranty & Trust Company which in turn tendered the defense to the respondents, its indemni-

tors.   The result was a judgment in favor of the lien claimants and against Mrs. Smith and her husband, who paid the judgment.

Mr. Bort, the contractor, at this time being in default and having suspended work on the building, was served with notice under the contract to proceed therewith in three days or the contract would be forfeited.   Thereafter the contractor, the owner, and the Title Guaranty & Trust Company agreed that the unpaid indebtedness against the building amounted to about $200, and estimated that $500 additional would complete the building.   They thereupon entered into a writing, to the effect that Mrs. Smith might pay these claims, and that one A. D. Phillips should remain in charge as foreman of the building until completion, and that the payment of accruing bills by the owner should not be considered as a waiver of any of the provisions of the bond.

Later another agreement to the same effect was entered into, but it was then estimated that $1,400 would be necessary to complete the building, and that the owner had that amount which would be due upon the contract upon completion of the building.   Still, later, when this money was expended and the building uncompleted, another agreement was entered into between the same parties, substantially the same as the other two above mentioned, except that the owner was authorized to furnish money to complete the building according to the original contract without waiving any of the provisions of the surety bond.   Mrs. Smith subsequently did this, and expended altogether some $3,950 more than the original contract price.   These respondents, the indemnitors, were not parties to these last named agreements, and there is some evidence to the effect that one of them, at least, was not informed thereof.

After the building was completed, Mrs. Smith and her husband brought an action against the appellant on the surety bond for $2,000, the full penalty thereof.   The appellant tendered the defense to the respondents, who were indem-

nitors. The respondents accepted the tender, and by their attorneys defended the action, which resulted in a judgment in favor of Mrs. Smith, against the appellants in the sum of $2,000 and costs. The respondents thereupon refused to pay the judgment obtained against the surety company in that action. The appellants thereupon brought this action upon the indemnity bond to recover the amount of the loss upon the guaranty bond. The trial court found that the respondents were not liable because, (1) there was a substitution of contractors; (2) a portion of the contract price was not withheld until completion of the building, as provided for in the original contract of construction; and (3) because the building constructed was a brick veneer building, instead of a frame building as described in the indemnity bond.

Assuming for the purposes of this case that the judgment obtained by Smith and wife against the appellants, which judgment the respondents unsuccessfully defended, was not binding upon the respondents, we are of the opinion, nevertheless, that the record does not sustain the findings upon which the trial court based its judgment of nonliability in this case. It is true that a stricter rule prevails in favor of a noncompensated surety than a compensated one. The former may stand upon the precise terms of his contract, which may not be extended by construction or implication to cover a case not within its provisions; but where there is no substantial deviation from the terms of the contract, the surety is bound in the one case the same as in the other. *Cowles v. United States Fidelity & Guaranty Co.*, 32 Wash. 120, 72 Pac. 1032, 98 Am. St. 838.

In this case Mr. Bort entered into a definite building contract with Mrs. Smith. The building was definitely described and located. The appellant here guaranteed the faithful performance of that contract, which was referred to and made a part of the guaranty bond. These respondents, in consideration of the execution of the guaranty bond by the appellants,

13—52 WASH.

agreed to indemnify and save the appellants harmless on account of such guaranty. The building was referred to in the bond of indemnity as a "two-story frame dwelling, situated on Harvard avenue and Aloha street, owned by Emily E. Smith." These two bonds and the contract, together with the plans and specifications, were all one transaction. They definitely referred to and identified each other and, of course, must be construed as a whole. It is not claimed, as we understand the evidence, that a different building than the one agreed upon was erected; but it is claimed that, after Mr. Bort became financially embarrassed and had failed to perform his contract and after liens were being foreclosed, the agreements subsequently entered into between Mr. Bort and Mrs. Smith and the guaranty company made a new contract and substituted a new contractor for Mr. Bort, and that respondents were thereby released from their contract of indemnity. The original contract provided in express terms that, if the contractor, Mr. Bort, should fail to prosecute the work, thereupon the owner might give three days' notice of forfeiture and proceed to finish the building herself and pay the bills and deduct the cost thereof from the amount remaining due on the contract, and that if the cost exceeded the amount due on the contract, the contractor should repay the excess to the owner. It seems to be conceded, at any rate it is conclusively established, that, at the time these subsequent agreements were entered into, Mr. Bort had entirely failed and had forfeited his contract; and thereupon, in order to protect themselves as far as possible and for the benefit of the surety company and the indemnitors, the subsequent agreements were entered into. These agreements did not authorize anything to be done which was not required under the original contract. They did not change the original contract in any way. It is true another man was placed in charge of the work, and it was stipulated that money in the hands of the owner, which could not have been required until the comple-

tion of the work, might be advanced to pay for the work; but the owner under the express terms of the original contract, without any further agreement or consultation with the surety or the indemnitors, was fully authorized to do all these things. She was at liberty to employ other men and choose other materials and advance money to pay therefor, after forfeiture of the contract. The only effect of these agreements was to show that the owner and the contractor and the guarantor were working in harmony and not intending to waive any of the provisions of the original contract. We think it clear that they did not do so, and the liability of the indemnitors was not changed in the slightest.

It is also claimed that the building constructed was a "brick veneer building," while the building which was described in the contract of indemnity was a "two-story frame dwelling;" and therefore that the indemnitors are not liable on their contract of indemnity. It is not claimed that the building constructed was different from the one contracted for. The plans and specifications showed exactly what the building was, and that it was a brick veneer building. The guaranty bond referred to the building as a two-story frame residence, and also to the contract which described the building fully. The indemnity bond referred to the same building by reference to the guaranty bond. The evidence also makes it quite clear that such a building might properly be described either way. We are satisfied, therefore, that the two descriptions, though in technically different terms, referred to the same building.

We are clearly of the opinion that the respondents are liable under the facts shown. The judgment is therefore reversed, and the cause remanded with directions to the lower court to enter a judgment in favor of the appellant and against the respondents for the penalty named in the bond.

RUDKIN, C. J., FULLERTON, CROW, DUNBAR, GOSE, and CHADWICK, JJ., concur.