[No. 9020.   Department Two.   January 4, 1911.]

JAMES BLACK MASONRY & CONTRACTING COMPANY,

*Respondent*, v. NATIONAL SURETY COMPANY,

*Appellant.*[1]

PRINCIPAL AND SURETY—INDEMNITY—COMPENSATED SURETY—RELEASE—CHANGE IN CONTRACT—PREJUDICE.   A compensated indemnity company which gave a bond to secure the performance of a subcontract to furnish stone for a building, is prejudiced by being deprived of its security and by relieving the principal in the bond of the inducement to perform his contract, and there is a substantial breach of the contract discharging the surety from liability, where the contract provided for payment to the contractor only when the stone had been placed in the building, and then upon certificate of the architect; and without notice to the surety the contract was changed and payments aggregating $3,500 were made upon a $16,500 contract before they became due and without any architect's certificate; and but for a delay of sixty days by the principal contractor, the principal in the bond could have completed the subcontract for the stone (DUNBAR and CROW, JJ., dissenting).

PRINCIPAL AND SURETY—INDEMNITY—CONTRACT—CONSTRUCTION. While a rule of strict construction applies to sureties and guarantors, a contract of indemnity is subject to the same construction as any other contract in order to ascertain and give effect to the intent of the parties.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 29, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract.   Reversed.

*Roberts, Battle, Hulbert & Tennant*, for appellant.

*Arthur E. Griffin*, for respondent.

CHADWICK, J.—Respondent took a contract for the erection of the Leary Building, in the city of Seattle.   He let a subcontract to the Ellis Granite Company, to cut and place all the stone in the first two stories of the building.   It was agreed that the entire work should be finished within one

[1]Reported in 112 Pac. 517.

hundred and twenty-five days from the date of the contract, which was December 12, 1908. The work was delayed, through no fault of the Ellis company, for about sixty days, but was finally finished without any changes or alterations material to this inquiry. The contract price was $16,500, to be paid as follows:

"On the 1st day of each month the contractor shall render to the general contractor an itemized statement of the work placed in the building during the preceding month, which statement shall be verified by the architects, and upon the certificate of the architects there shall immediately be paid to the contractor by the general contractor, eighty-five (85) per cent of the amount of work finished. On the final completion of the work and the acceptance thereof by the architects, as evidenced by their certificate, the remainder of the contract price, together with the percentage retained shall be immediately payable."

The contract provided that, "the contractor shall furnish a bond in the amount of $5,000, for the proper performance of the terms of this agreement." Appellant furnished this bond, which by its terms provided that the contract should be a part of its contract of indemnity. The bond contained the usual provisions with reference to notice to the surety of any material alterations or changes in the contract.

On February 3, 1909, the Ellis company gave notice that it was ready to begin the work of installing the stone, but owing to some delay on the part of the general contractors, it was not permitted to begin work of placing the stone at the time provided in the contract. This delay continued for sixty days. The Ellis company, having no other immediate source of income, was unable to meet its payrolls, and accordingly called upon respondent to make some advances. Respondent, in conjunction with and by the direction of the Leary company, and having satisfied itself that a considerable quantity of the stone—about $7,000 worth—had been cut and was in the yards of the Ellis company, ready for delivery, did make the following advances: February 11, 1909, $500;

February 17, 1909, $2,000; March 6, 1909, $1,000. It being apparent to respondent and the Leary company that additional advances would have to be made, their respective superintendents went to the local agent of the appellant, and asked him to approve in writing of the payments already made and give his endorsement to the payment of such additional sums as were necessary to meet the expense account of the Ellis company. This request was referred by the agent of appellant to its attorneys, and on the next day respondent and the Leary company were informed that appellant conceived the contract to have been broken, and that it was no longer liable on its bond, and accordingly refused to approve the payments that had been made or to give its endorsement to the additional payments required.

On March 26, respondent notified the Ellis company to forthwith proceed with the erection of the granite for the Leary building, "under and pursuant to your contract dated December 12, 1908," and on March 30, 1909, respondent notified the appellant that the Ellis company had "defaulted in the performance of its contract and has refused to proceed therewith, and further that the wages of the employees of said company for the week ending March 20, 1909, were due and had not been paid, and no work has been done under said contract since that date." This notice was of date May 25, and repudiated by appellant, on the theory that, by the advancements referred to and other advancements made thereafter, it was no longer liable, and refused to recognize any further liability on the bond.

The court found that, when the Ellis company made default in payment of its workmen and failed to proceed with the work of installing the stone in the building, it was impossible for the respondent to procure the stone elsewhere without great delay which would have been disastrous to respondent and subjected it to great loss. At or about March 26, and prior to the notice given by the respondent to the appellant that the Ellis company had abandoned its contract, its presi-

dent and secretary went to respondent and to the Leary company and told them that the Ellis company would not be able to carry out its contract, that it was without funds, and that the party who had been financing it had refused to make any further advances, and thereupon offered to respondent and to the Leary company the material in its yards, and the use of its yards and appliances, in the event that they desired to perform the work upon their own account. Whereupon the Ellis company discharged its bookkeeper, took out its telephone, and from that time on did nothing in the way of performance of its contract. The Leary company and respondent put their own man in charge of the yard as timekeeper and bookkeeper, and employed the president of the Ellis company as superintendent at a salary of $50 a week, and at each week end the Leary company drew a check to cover the pay rolls and necessary expenses. This check was drawn in favor of Mr. Sayre, the superintendent, and by him converted into cash which was paid over to the laborers. It does not appear in evidence that anything was paid by the Leary company or the respondent over and above the actual cost of labor and material, unless it be some charges for the timekeeper, telephone, and other items which might be deducted without affecting the real question before us. The trial court found:

"That the defendant National Surety Company was not prejudiced, injured or damaged in any way or to any extent whatsoever either by the first three payments made February 11, 1909, February 17, 1909, or March 6, 1909, aggregating $3,500, and that said defendant was not prejudiced, injured or damaged in any way whatsoever by the subsequent payments made by the plaintiff to the defendant Ellis Granite Company to secure the completion of the contract of said Ellis Granite Company."

The court concluded:

"That the plaintiff is entitled to a judgment against the defendant National Surety Company for the full sum of $5,000, together with interest thereon at the rate of six per cent per annum from the 24th day of November, 1909."

Appellant relies upon five propositions to sustain its appeal:

"First—The advancement of $3,500 before any work whatever was done.

"Second—Payment of $6,632.46 before any material was delivered upon the grounds.

"Third—Payment of $9,571.19 before any payment was due.

"Fourth—Advancements and payments at all times over and beyond the 85 per cent.

"Fifth—Making final payment without notice and without holding back reserve fund as stipulated."

The contentions of respondent are sufficiently indicated by the statement of the facts and the findings which we have quoted or summarized.

This court has held, and it is a doctrine from which we are not inclined to depart, that a compensated surety will not be relieved of his obligation unless it be shown that he has been in fact prejudiced by a breach of the contract; that is to say, the breach must not have been technical but substantial, working a pecuniary disadvantage to the surety, or depriving him of some protection or privilege reserved in the bond. *Beebe v. Redward*, 35 Wash. 615, 77 Pac. 1052; *Cowles v. United States Fidelity & Guaranty Co.*, 32 Wash. 120, 72 Pac. 1032, 98 Am. St. 838; *Title Guaranty & Trust Co. v. Murphy*, 52 Wash. 190, 100 Pac. 315; *Denny v. Spurr*, 38 Wash. 347, 80 Pac. 541; *Heffernan v. United States Fidelity & Casualty Co.*, 37 Wash. 477, 79 Pac. 1095; *Monro v. National Surety Co.*, 47 Wash. 488, 92 Pac. 280; *Leghorn v. Nydell*, 39 Wash. 17, 80 Pac. 833.

Respondent relies principally upon *Leghorn v. Nydell*, and *Monro v. National Surety Co.*, supra. These were cases holding that payments advanced to a contractor before the time stipulated in the contract would not exonerate the bond, in the absence of a positive showing of prejudice. In each of these cases, as in others of a like nature, there was a substantial compliance with the terms of the contract by the contractor. The payment was made in accordance with the

terms of the bond, and having thereafter become due by rea-
son of a performance of the contract, it was held that the ob-
jection was technical, and the surety was held to its obliga-
tion.    As was said in *Cowles v. United States Fidelity &*
*Guaranty Co.*, *supra*, the bond is subject to the contract, and
was made after the contract.   It is the contract instead of
the bond which is primarily to be construed.   And, as there
suggested, the inquiry should be whether another or a new
contract has been substituted for the old one.   We think that
in this case there was not only a substantial departure, but a
clear abandonment of the original contract, and a new con-
tract whereby respondent and the Leary company undertook
to do the work upon their own account and for their own
benefit.   The contract provided that payment should only be
made when the stone had been placed in the building, and then
upon the certificate of the architect; but without notice to
the surety, payments aggregating $3,500 were made upon
a $16,500 contract, before they became due and without any
certification on the part of the architect.

There is evidence to the effect that, but for the delay oc-
casioned by the Leary Construction Company, amounting to
nearly sixty days, the Ellis company could have performed
its contract.   It was because of the act of the Leary company
then, rather than because of the fault of the Ellis company,
that it was put in default and compelled to abandon its work.
The work being taken over by the respondent and the Leary
company, the situation made by them cannot be evaded by
showing that accounts were kept with the Ellis Granite Com-
pany; that Sayre had been and was in name still its presi-
dent, and like circumstances.   Facts and legal conclusions
cannot be overcome by mere bookkeeping.   The whole record
shows that the Ellis company never performed, nor attempted
to perform, any part of its contract, and that the $3,500 or
any part thereof never became due it, as was so in the cases
relied upon by respondent.   No obligee should assume to pay
a substantial part of the contract price—as counsel for re-

spondent contend and as it seems probable, a sum equal to or greater than the profit on the job—without notice to the surety. Advances or over-payments are allowed and held to be without prejudice where, under the facts of the particular case, they afterwards become due to the party to whom they have been paid. But here, not only was the time and manner of the payment changed, but more than one-half of the contract price was paid before it was due under the contract. It was never paid under the contract or to the contracting party. It was paid for the actual cost of material and labor, to those who had furnished these items for the benefit of the respondent. The general rule is, if the building owner advances to the builder more than he is entitled to under the contract, the surety will be released. The rule rests upon two reasons. The one is that such advance deprives the surety of the security which the owner or principal contractor has agreed to hold for his benefit, and the loss of the inducement which otherwise would have operated on the contractor's mind to induce him to finish the work in accordance with the terms of his obligation. Hudson, Building & Engineering Contracts, 694; Pringrey, Suretyship & Guaranty, §§ 103, 138; 27 Am. & Eng. Ency. Law (2d ed.), p. 496; *Peters v. Mackay*, 20 Wash. 172, 54 Pac. 1122; *Calvert v. London Dock Co.*, 2 Keen 638; *Wehrung v. Denham*, 42 Ore. 386, 71 Pac. 133; *Glenn County v. Jones*, 146 Cal. 518, 80 Pac. 695; *Leiendecker v. Aetna Indemnity Co.*, 52 Wash. 609, 101 Pac. 219.

The case of *Glenn County, v. Jones, supra*, is directly in point. Upon a $5,580 contract, $1,860 was paid prematurely, without the consent of the sureties, although $1,900 worth of the material had been put on the ground. The motive was, as in this case, to help the contractor along with his work, and, as here, the board satisfied itself that enough material was on the ground to cover the payment. The court said:

"In our opinion the obligation of the principal was altered

in a material respect without the consent of the sureties. The contractor was under the obligation of placing all the materials on the building-site before he was entitled to any money under the terms of his contract. By the payment to him before he had done so, he secured the money before performing his obligation. The pressure which would have been exerted upon him to continue in the performance of his contract and place all the materials on the site, was removed when he received the money. He received it before he was entitled to it, without the consent of the sureties. The sureties had bound themselves upon the assumption that the plaintiff would keep its contract in good faith. We can see no difference in principle if the whole of the contract price had been paid before any of the materials were placed on the ground. In such case could any one doubt that the sureties would have been exonerated? The risk of guaranteeing the construction of a building to be paid for when completed and accepted, is quite different from the risk of guaranteeing its construction, if the whole contract price should be paid in advance. In the one case the contractor can only get the money by performing his contract, while in the other he would only pay out the money already received, in performing it. In this case the sureties agreed and guaranteed that Jones would place all the materials on the building-site, on condition that he was to receive no money until he had done so; they did not agree that if paid in advance he would place such materials on the site. By the payment, the hope of reward for further performance was lost, the temptation to act dishonestly was increased."

Counsel for respondent seeks to distinguish this case, because the contractor pocketed the money and then abandoned the contract. But the legal principle involved rests, not upon the fact that the contractor took the money and appropriated it to his own use, but upon a breach of the contract by the obligee. Where the money went is immaterial to the surety. If the owner could pay a part when nothing was due, and recover when nothing ever became due under the contract to the principal of the bond, he could then pay all, and upon abandonment hold the surety upon the plea of good motive, and that the payment was made for the benefit of the

obligor.   In all the cases decided by this court, and by all
other courts holding that payment by the owner would not dis-
charge the principal, the facts have been such that no prej-
udice resulted by reason of such payments to the surety.
But in this case the surety was prejudiced, in the two es-
sentials noticed and endorsed as sufficient by all the books;
that is, that they were deprived of that security which their
contract gave them; and furthermore, the contractor was
relieved of the inducement to perform the labor and furnish
the material stipulated in his contract.

The case most relied upon by respondent is *Smith v. Molle-
son,* 148 N. Y. 241, 42 N. E. 669.   There the contract was
"to furnish, cut, set and clean," all the granite work for a
building; and provided for payments in installments not to
exceed a certain per cent "of the estimated value of the work
performed on the building."   It was properly decided that
the contract should not turn on the words "on the building,"
so as to render payments made on the estimates of the work
done elsewhere a departure available as a defense to the
surety, it being evident from the situation of the parties, the
nature of the work, and other provisions of the contract, that
the intention was to make the payments as the work pro-
gressed.   In so holding, however, the court expressly affirmed
the rule as we have announced it and as that court had pre-
viously declared it to be.   The object of the courts should be
to ascertain and enforce the contract as made, and not to
hold the surety to a condition not within the fair contempla-
tion of the parties.   Here the contract was to pay for the
work placed "in the building" during the preceding month.
We have held that compensated sureties would not be heard to
invoke the rule of *strictissima juris,* but our holdings have
gone no further than to hold that such sureties could not
claim the same rule of strict construction available to non-
compensated or voluntary sureties or guarantors.   When the
contract is plain and unambiguous, or when its doubtful
terms have been reconciled, whether by the one rule or the

other, this court has, like all others, held the parties to their contract; for as is said in the books, "a surety is bound by the contract he made, and not by some contract which he did not make, even though the latter may be more favorable to him than the former." Sureties and guarantors are not to be made liable beyond the express terms of their contract. The only question open in such cases is to determine what the contract is and enforce it.

"It is unquestionably the well settled rule of law that a surety is entitled to a somewhat rigid construction of his contract; but before this rule is applied, his contract is subject to the same construction as any other contract, in order to ascertain and give effect to the intent of the parties, and it is not until this is ascertained that its language is to be regarded as *strictissimi juris*." Pingrey, Suretyship & Guaranty, § 67;

citing *Belloni v. Freeborn*, 63 N. Y. 383; *People v. Backus*, 117 N. Y. 196, 22 N. E. 759; *Locke v. McVean*, 33 Mich. 473; *Shreffler v. Nadelhoffer*, 133 Ill. 536, 25 N. E. 630, 23 Am. St. 626.

The rule is stated in the last case as follows:

"The rule of strict construction, as applied to the contracts of sureties and guarantors, in no way interferes with the use of the ordinary tests by which the actual meaning and intention of contracting parties are ordinarily determined, but merely limits their liability strictly to the terms of their contract when those terms are ascertained, and forbids any extension of such liability by implication beyond the strict letter of those terms."

Here the contract is plain. It was agreed that no payment should be made until the first day of the month following the installation of the stone. The conduct of respondent and the Leary company shows that they so understood it. The payment of $3,500 was made in defiance of the terms of the contract and, under the authorities cited, operates to the legal prejudice of appellant. That this court has never held that the obligee of a bond was not bound to observe the terms of his contract, or that the surety was bound in any event, it is

only necessary to refer to the case of *Leiendecker v. Aetna Indemnity Co., supra,* which is in line with an unbroken current of authority flowing from the leading case of *Calvert v. London Dock Co., supra,* and all holding that, when ascertained, the stipulations of the contract were binding on both parties. In the *Leiendecker* case, after setting out the specification that the last payment should be reserved for the protection of the surety, Judge Dunbar said:

"There was a contractual relation existing by reason of this bond between the indemnity company and the appellant. This provision was accepted by the appellant when he accepted the bond as a specification of his duties in the premises'; and it seems to us that it was a fraud upon the indemnity company to neglect to notify it that a payment had been made which was not disclosed in the contract upon which the bond was given, and the making of which rendered unavailing the provision in the bond just quoted. Having accepted the bond with a provision of this kind, we think the appellant is bound by such provision."

Judgment reversed, with instructions to the lower court to enter a decree in favor of appellant.

RUDKIN, C. J., and MORRIS, J., concur.

DUNBAR, J. (dissenting)—I dissent. The whole record convinces me that the court was justified in finding that the surety company was not prejudiced to any extent, or in any way, by the payments made, and this under our uniform holdings is the test of whether the deviation is material. In the *Leiendecker* case, cited above, it was apparent that the payments out of order were made to the detriment of the surety company. So that the case is in no wise in point.

CROW, J., concurs with DUNBAR, J.