[No. 10759.    Department Two.    April 22, 1914.]

CLYDE H. WILLIAMS, *Respondent*, v. PACIFIC COAST CASUALTY COMPANY, *Appellant*.[1]

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—OVERPAYMENTS—ADVANCES—WAIVER. A compensated surety is not discharged by overpayments to the principal, a subcontractor, where, after notice of such overpayments, the surety, instead of denying liability, executed a written consent to the continuance of payments upon a different basis than that stipulated in the contract, and after the full contract price had been paid, consented to further payments for the purpose of completing the contract up to the limit of the penalty provided in the bond.

SAME—STREET IMPROVEMENTS—LIENS—CONSTRUCTION OF CONTRACT—LIABILITY OF SURETY. Under Rem. & Bal. Code, § 1131, providing that any person doing work at the request of the owner of real property on any street or road in front of or adjoining the same, has a lien upon such real property for the labor performed, work done to improve a street under a private contract with the owners of the abutting property would be subject-matter for a valid lien upon the property; hence is covered by a bond given to secure the performance of the contract, in which it was agreed that liability under the bond should include liability for labor claims paid which "are valid liens against said property."

SAME—LIABILITY OF SURETY—ACTIONS—TIME TO SUE—WAIVER OF LIMITATION. An action on a subcontractor's bond to secure the performance of a street contract is commenced within the six months after breach of the contract limited in the bond, where the first breach was waived and the subcontractor allowed to complete the contract, and the action was commenced within six months thereafter and immediately after the termination of litigation which was necessary to determine the exact amount due, in which the surety had opportunity to defend and protect its interests.

[1]Reported in 140 Pac. 74.

Appeal from a judgment of the superior court for Spokane county, Smith, J., entered June 17, 1912, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Samuel R. Stern,* for appellant.

*Danson, Williams & Danson* (*George D. Lantz,* of counsel), for respondent.

CROW, C. J.—In December, 1910, the plaintiff, Clyde H. Williams, contracted with owners of abutting real estate to improve Overbluff Road, a street in the city of Spokane. Later he sublet the work by written contract to one William A. Glasson, and the defendant, Pacific Coast Casualty Company, a corporation, as surety, executed and delivered to plaintiff a bond in the penal sum of $2,000 to secure the faithful performance of the subcontract by Glasson. This is an action to recover the full penalty of the bond. From a judgment in plaintiff's favor, the defendant has appealed.

The evidence shows that Glasson's contract required him to complete the work by April 15, 1911; that monthly payments of eighty-five per cent of estimates for labor and material were to be made to him; that, if Glasson failed to pay valid claims incurred for labor and materials in the performance of the contract, respondent might pay the same; that early in March, 1911, Glasson was unable to meet his payrolls; and that, to enable him to proceed with his contract, appellant, on March 16, 1911, executed and delivered to respondent a written instrument, which provided that:

"The said Pacific Coast Casualty Company, of California, does hereby consent that the said Clyde H. Williams shall be and is hereby permitted to advance and pay such amounts as may be necessary to take up and pay said unpaid pay rolls and other expenses to date, and which are estimated to be approximately $1,000; and that shall he elect to advance any other moneys during the progress of the work for like pur-

poses, over and above 85 per cent of the engineer's certificate, which, under said agreement, he is required to pay; then and in that case, upon completion of the work and improvements under said agreement, whether the same shall be completed by the said Glasson in accordance with the agreement, or by or under the direction of said surety, so much of said moneys now to be advanced for pay rolls and other expenses now due or maturing, and so much, if any, further moneys which said Williams may hereafter advance for like purpose, shall be reimbursed to him, either by repayment to him by Glasson, or by being retained by said Williams from any moneys under said agreement; and that failure to so reimburse said Williams for moneys so to be advanced by him, or any part thereof, shall be deemed breaches of said agreement and failure to keep and perform same; and that any other breaches or failures, if any there shall be, shall be deemed covered and protected by said bond given by the party of the first part hereto, to the amount necessary to fully indemnify the said Williams and his executors, administrators and assigns, but not exceeding in any case the penalty of said bond, $2,000.

"It is further agreed and understood that the said Williams is not granted permission under this agreement to pay to said Glasson or other interested parties, any amounts that would pay under the contract more than the amount of the contract, viz., $7,982.    . . .

"It is further agreed that said Williams shall advise the said E. L. Ensign, or other attorney in fact of the Pacific Coast Casualty Company, of California, located in Spokane, Washington, from time to time upon request of any and all advances made by him for or upon said Glasson pay rolls and other expenses in excess of the 85 per cent of the amounts of engineer's certificates as aforesaid, and also of any amounts repaid thereof, if any."

Thereafter, respondent, by letters and reports, advised appellant of the several amounts disbursed by him from time to time for labor and materials. On May 26, 1911, he informed appellant that he had thus disbursed the full contract price of $7,982; that twenty-five per cent of the work was yet to be completed; and asked either that appellant consent to further payments to be made by him to the full amount of the bond,

or that appellant take over the contract and complete the improvement. Appellant, in response, directed respondent to confer with its Spokane agent and report. Respondent did so, explaining all conditions, and was directed by the agent to let Glasson finish the work as appellant did not wish to take over the contract. Appellant's agent further assured respondent that he was protected by the bond to the extent of $2,000 over and above the contract price, and authorized respondent to pay all labor claims and thus protect the abutting property from liens. Labor claims amounting to more than $3,000 were thereafter paid by respondent. There is considerable dispute relative to certain advances made by respondent for groceries and other supplies, furnished to the subcontractor to be used in a boarding house conducted by Glasson's wife, and at which the men employed by Glasson were boarders. Appellant insists that these payments were not contemplated by the contract or bond; but we regard the discussion of this question as immaterial for the reason that, if all payments of this character were to be eliminated, the fact would still remain that respondent had paid for labor performed and material, used in the performance of the work, . more than the contract price and face of the bond.

Appellant insists that, by the terms of its bond, it only became liable to respondent for the payment of claims which would support enforceable liens; that a public street cannot be subjected to any liens for which it was bound to reimburse respondent; that respondent, from time to time, made advances to Glasson without appellant's consent, in violation of the terms of the contract and bond; and that appellant was thereby released from its liability as surety.

The evidence does show that advances were made by respondent prior to the date on which the appellant executed the written consent above set forth. These payments were made in settlement of pay rolls, for materials used in the work, and for certain groceries used in the boarding house. Appellant, however, knew of these advances before it exe-

cuted the written consent of March 16, 1911, and was thereafter advised from time to time of all further payments made by respondent until the full contract price was disbursed by him.   In support of its contention that the advancements mentioned released it from liability, appellant cites the opinion of this court in *Black Masonry & Contracting Co. v. National Surety Co.*, 61 Wash. 471, 112 Pac. 517.   There the contract price was $16,500.   Payments to the contractor of eighty-five per cent of the value of stone actually cut and placed in the building, were to be made each month.   Three thousand five hundred dollars of the contract was paid to him by the owners before any stone was placed in the building.   Thereafter the owner and principal contractor, as beneficiaries of the bond, requested the surety company to approve such payments.   This it promptly refused to do; declaring that the contract had been broken, and that it was released.   At all subsequent times, the surety company denied liability, refusing to conduct further negotiations. Similar facts do not exist in this case.   Instead of denying liability, appellant executed its written consent that payments might be made on a different basis from that stipulated in the contract, and after the full contract price had been paid by respondent, consented to further payments by him for the purpose of completing the contract.   It is manifest that a mere statement of the facts is sufficient to fix appellant's liability.   *Manhattan Co. v. United States Fidelity & Guaranty Co.*, 77 Wash. 405, 137 Pac. 1003, and cases therein cited.   The controlling feature of this case is that appellant not only knew respondent was financing Glasson's undertaking, but it expressly consented to and ratified his acts.

The surety bond, which by its terms designated respondent as "owner," provided that:

"The 'Surety' shall not be liable under this bond to any one except the 'owner,' but it is agreed that the 'owner' in estimating his damage, may include the claims of mechanics

and material men, arising out of the performance of the contract, and paid by him only when the same, by the statutes of the state where the contract is to be performed, are valid liens against said property."

Citing this stipulation, appellant, as above stated, insists that liens cannot be enforced against a public street; that the contract provided for a street improvement; and that appellant would be liable only to respondent for the payment of claims which would support valid and enforceable liens. Rem. & Bal. Code, § 1131 (P. C. 309 § 59), provides that:

"Any person who, at the request of the owner of any real property, his agent, contractor or subcontractor, clears, grades, fills in or otherwise improves the same, or any street or road in front of, or adjoining the same, has a lien upon such real property for the labor performed, or the materials furnished for such purposes."

Respondent had a contract with the owners of the abutting property to improve this street. The work was not being done by the city, but was a private enterprise. Under the section quoted, work thus done would be subject-matter of valid liens upon the abutting property. Manifestly one of the purposes of the bond was to protect respondent from liability to the owners of abutting property for any such liens, as respondent would be required to satisfy them before he could demand payment from the property owners under his contract.

Appellant further contends that Glasson breached his contract on March 16, 1911, and that this action was not brought within six months thereafter, the time limited by the bond. The breach mentioned was, as above shown, waived by appellant's subsequent acts, and with its consent, Glasson continued the performance of his contract. Without entering upon a discussion of the evidence, it is sufficient to say that the contract was not completed until sometime in the month of July, 1911, and that this action was commenced within six months thereafter. It further appears that vari-

ous laborers and materialmen were seeking to foreclose liens upon the abutting property; that Glasson prosecuted a claim for extras, which respondent disputed; that all of these matters were litigated in a separate and single action, prior to the commencement of this action; that respondent notified appellant of the pendency of the prior action; that he tendered appellant an opportunity to appear and defend its interests therein; that appellant's attorney was present at the trial, and had an opportunity to protect appellant's interests; that the issues therein were not finally adjudicated until the month of December, 1911; that respondent did not ascertain the exact amount due him from Glasson until the termination of that litigation; and that immediately thereafter this action was commenced. We find no merit in appellant's contention that the action was not commenced in time.

The judgment is affirmed.

FULLERTON, MORRIS, MAIN, and ELLIS, JJ., concur.