[No. 14664. Department One. June 21, 1918.]

O. N. FINNE et al., Respondents, v. MARYLAND CASUALTY COMPANY, Appellant, TOM HOGART, as Tom Hogart & Company, Defendant.[1]

PRINCIPAL AND SURETY—RELEASE OF SURETY—CONTRACTOR'S BOND—CONDITIONS. The surety upon a subcontractor's bond, entitled to notice and opportunity to complete the work, is not released from liabilities as they existed at the time of the default by reason of the principal contractor's assuming control and completing the work after giving notice of the default, where no burden or liability was imposed upon the surety on account of such completion of the work.

SAME—RELEASE OF SURETY—CONTRACTOR'S BOND — OVERPAYMENTS. Under a subcontractor's bond providing for retention of a percentage of the value of all work performed until complete performance, the surety is not released by payments during the progress of the work in excess of the amount due, where they were necessary to protect the property from lien claims and did not prejudice the surety, and more than the amount of the reserved fund had been used to pay creditors and diminish the liability of the surety.

[1]Reported in 173 Pac. 501.

SAME—CONTRACTOR'S BOND—LIABILITY OF SURETY—LIENS TO BE DIS-
CHARGED. A surety upon a subcontractor's bond for the faithful per-
formance of a state contract and full protection to the state against
mechanics' liens and other claims, under Rem. Code, § 4326, is liable
for claims duly filed with the state board for materials furnished
prior to default the fairness of which was not questioned, although
they had not yet been paid.

Appeal from a judgment of the superior court for
King county, French, J., entered October 5, 1917, upon
findings in favor of the plaintiffs, in an action on con-
tract, tried to the court. Affirmed.

*Grinstead & Laube,* for appellant.

*O. L. Willett, Frank Oleson,* and *John A. Soule,* for
respondents.

MITCHELL, J.—The evidence in this case shows that
respondents, plaintiffs, are partners, and on June 1,
1916, were already under contract with the board of
regents of the University of Washington to construct
a building, known as the Home Economics Building,
and complete it by September 12, 1916, with a penalty
of $100 for each day's delay thereafter that would in-
terfere with the use of the class rooms and entrances.
On June 1, 1916, respondents, by written contract, sub-
let the lathing and plastering of the building to de-
fendant, Tom Hogart, who was to furnish material and
labor, his work to start upon notice from respondents
and continue in harmony with the other work on the
building, and complete it without delay. Respondents
agreed to pay defendant $5,774, as follows: On the
10th of the month, eighty-five per cent of the value of
material and labor actually put in the building during
the preceding month, according to approved estimates.
On June 17, 1916, appellant, Maryland Casualty Com-
pany, delivered to respondents a bond assuring per-
formance of the Hogart contract without loss or dam-

age to respondents.    The bond, *inter alia,* contains
these words:

"Provided, however, that this bond is executed upon
the following express conditions, the performance of
each of which shall be a condition precedent to any
right of recovery thereon:

"First:    That in the event of any default on the
part of the principal, a written statement of the par-
ticular facts showing such default and the date thereof
shall be delivered to the surety by registered mail, at
its office in the city of Baltimore, Maryland, promptly
and in any event within ten days after the obligee or
his representative, or the architect, if any, shall learn
of such default; the surety shall have the right within
thirty days after the receipt of such statement to pro-
ceed, or procure others to proceed, with the perform-
ance of such contract."

Tom Hogart signed the bond as principal.    Hogart
proceeded with the lathing and plastering (subletting
the lathing to one L. E. Nelson) until Saturday, Aug-
ust 19, 1916, when Hogart's bank account was gar-
nisheed, by reason of which the pay checks given his
craftsmen on that day were dishonored.    Plasterers
could not be had for this work until the checks were
paid.    Hogart failed to take up the checks, and on
August 23, 1916, respondents had a conference with the
soliciting agent of appellant for Seattle, at that time
explaining the situation; and on that same day, by
registered mail, sent written notice to appellant at its
home office in Baltimore, stating therein financial de-
linquencies of Hogart with respect to this contract;
that his bank account had been garnisheed; that he
was unable to pay or take care of his pay-roll of the
last week.    The notice further says as follows:

"Mr. Hogart's men have refused to continue on the
job until they are paid for their last week's work, and
in order to have the job completed it has become neces-
sary for us to take up the checks issued by Mr. Hogart

last week, and it appears that we will have to take care of the pay roll from now on. We are charging these items to the account of Tom Hogart and are looking to your company as surety of his bond to see that we are reimbursed.''

At this time, August 23, 1916, the work remaining undone under the Hogart contract included the two entrances to the building. Hogart did not return to work after August 19, 1916, and the work was at a standstill until August 24, 1916, when respondents took up the dishonored checks of Hogart and proceeded faithfully with the job, completing it about October 6, 1917, at prices for labor and material as low as possible. Seattle lawyers for appellant, on August 22, 1916, had notice of the situation, and on that day notified the home office by wire that Hogart had probably defaulted, and on August 28, 1916, according to reply instructions, the lawyers requested respondents to furnish a statement of the Hogart account and condition of the contract, which was done on August 29, 1916. Appellant never signified any wish to complete the work, and in no way objected to respondents completing it. Finne and Gjarde, respondents, then brought this action, declaring on the lathing and plastering contract of June 1, 1916, as to defendant Hogart, and on the bond as to both Hogart and the Maryland Casualty Company, demanding judgment in the sum of $3,573.25 and interest, alleging that amount to be the cost to appellant in excess of the contract price of $5,774, and some extras amounting to $161.25. Defendant Hogart, in his answer, counterclaimed for extra labor and material in the sum of $3,873.78; while the answer of appellant, Maryland Casualty Company, in addition to substantial denials, alleged affirmative matter (now most strongly relied on) that respondents, without appellant's consent, failed to perform

certain express and enumerated conditions contained in the bond, which it is claimed are conditions precedent to a recovery on the bond. Replies were filed denying the new matter in each answer. There was a trial without a jury, findings and conclusions were made, and judgment was entered for respondents in the sum of $3,016.58 against Hogart, and in the sum of $2,093.68 against the Maryland Casualty Company, the latter amount being also included in the judgment against Hogart; and it is further provided in the judgment that defendants may pay, and take credit on the judgment, the claims of L. E. Nelson for $481.72, and Sam Hunter & Company for $1,060.95. The Maryland Casualty Company appeals.

The facts above stated are supported by a preponderance of the evidence and so found by the trial court, as well as the following additional facts: Tom Hogart's counterclaim was established to the extent of $318.07 and no more; there were extras in the amount of $161.25; there was a balance of $481.72 due L. E. Nelson for lathing under his subcontract with Hogart, for which claim had been filed with the board of regents; there was a claim of $1,060.95 due Sam Hunter & Company for material furnished before default of Hogart, for which notice of delivery was given and claims filed with the board of regents; and the total cost to respondents was $9,472.50, which included $1,125.50, consisting of expenditures after Hogart's default or because of failure to file claims for work or material furnished Hogart, and hence no liability against respondents. The judgment of $2,093.68 against the company is arrived at by taking from the whole cost of $9,472.50 the sum of $1,125.50, made up of claims for which respondents are not liable and cost of construction to them after Hogart's default, which leaves $8,347, from which last amount take the Hogart

counterclaim, allowed, of $318.07, thus leaving $8,-028.93, from which subtract $5,774 (the original Hogart contract price), plus extras of $161.25, equalling $5,935.25, thus finally leaving $2,093.68. So that the judgment complained of provides only enough to pay what had already been paid on Hogart's account before default or was unpaid at that time and supported by proper lien notices filed, and does not cover the cost of any work or material after Hogart's default, nor of either work or material furnished Hogart or Nelson where there was no lien or claim notice filed, and hence no liability therefor against respondents and their bondsman to the board of regents. It is also to be noticed that respondents had, prior to Hogart's default, paid him $5,400, a large portion of which, without question, was expended on the building.

Appellant alleges a large number of errors, but for the sake of clearness and order reduces them to five, as follows:

(1) "The failure of respondents to permit appellant to complete the job after Hogart's default is a breach of a condition precedent; it goes to the essence of the contract and defeats respondents' cause of action."

Appellant calls attention to the provision of the bond, above referred to, with reference to the performance of each express condition thereof as a condition precedent to any right of recovery and reciting that, in case of default, written statement of facts showing default and date thereof shall be delivered to the surety by registered mail, etc., and "the surety shall have the right within thirty days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract." As already seen, the notice and statement were promptly given by registered mail to the company at its home

office, and again within ten days furnished to the company's attorneys, who were, by specific directions of the company, acting for the purpose of getting such statement. But appellant also contends that, without any waiver on the part of the company, the respondents assumed control and completed the work after Hogart's default, thereby violating a condition precedent and defeating recovery. All discussion of this latter point is manifestly out of the way, because, as already seen, the judgment reflects no burden or liability on account of respondents' completing the job. This provision of the bond only reserved to the surety the option to complete the work, exercise of which, or the lack of it, could in no sense, under the issues of this case, modify or change the rights and obligations of the parties as they existed at the time of the default. No prejudice is shown.

(2) "The failure of the respondents to retain the 15 per cent reserve balance released the appellant."

The bond says:

"and shall also retain that portion if any, which such contract specifies the obligees shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract . . . until the complete performance by the principal of all the terms."

Now, remembering appellant's obligation is to assure the performance of Hogart's contract with respondents, notice must be kept of the terms of that contract, among which is the following: A payment of eighty-five per cent to be made to the party of the first part (Hogart) of the value of labor and materials actually incorporated into said work, on approved estimates on the 10th day of each month during the preceding month. The contract does not provide for payment to the contractor, as the work progressed, of

eighty-five per cent of the money *earned*, measured by the contract price, but of the *"value of labor and materials actually incorporated into said work on approved estimates."* Hogart was working as subcontractor under a lump-sum contract, and if it be true that his contract price was too low, the payment of eighty-five per cent of value actually put into the job would lead to just such difficulty as we find here; for it appears from the evidence that the contractor spent on the job $600 more than he received, and still, at the time of his default, there were unpaid large sums against this work.

In the case of *Northwestern Nat. Bank v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, we held, in line with earlier decisions of this court therein referred to, that this contractor's reserve constitutes a trust fund for creditors, and that the surety has the right of subrogation to that balance should he be compelled to pay creditors, and also that he has the right to prevent its dissipation; and, continuing, we said in that case, quoting from *Maryland Casualty Co. v. Washington Nat. Bank*, 92 Wash. 497, 159 Pac. 689:

"His expectation when he goes on the bond is plain; *the principal may squander eighty per cent*, leaving the surety at the mercy of the creditors, but there is at least twenty *that will be applied to the creditors* in spite of him. *This amount*, originally reserved to protect merely the creditors, is a collateral security of the principal available to the paying surety."

It is plain that fifteen per cent of this contract price has not been squandered; but more than that amount, indeed, more than the contract price with extras added, has been used to pay creditors, every dollar of which diminished the bonding company's liability by just that much. Appellant insists on the rule "of strict right of law," but in the case of *Manhattan Co. v. United*

States Fidelity & Guaranty Co., 77 Wash. 405, 137 Pac. 1003 (in which a number of earlier cases of this court are reviewed), the rule is announced that a compensated surety on a building contract is not released unless something is done to his prejudice, and that payments during the progress of the work in excess of the amount due, where they are necessary to protect the property from lien claims of laborers, the amount of which is not questioned, will not release the surety. In all good reason, the respondents here occupy just as strong position as the owner of the building would, because, it being a public building, they are required to furnish bond themselves to take care of all claims for labor and material going into the building. Respondents are in no sense interlopers, but in that conduct of theirs now complained of were only protecting themselves, and it is significant that appellant neither pleads nor attempts to show any loss whatever on account of that conduct. All that respondents have paid, or are obligated to pay, for what had been done at the time of Hogart's default, appellant has indemnified them against.

(3) "The surety was released by increasing the contract price more than 10 per cent without its consent."

As to this, appellant, is in error. Extras were added only to the extent of $161.25, which is quite another matter from that of the work costing largely in excess of $5,774, which the surety company agreed should be the cost to respondents.

(4) "Respondents cannot recover for claims not already paid by them."

This refers to the claim of L. E. Nelson on the lathing subcontract filed with the board of regents for $481.72, and the claim of Hunter & Company for ma-

terial furnished Hogart and Nelson before default, for which notice of delivery was given and claim filed with the board of regents for $1,060.95, both of which claims are mentioned in the judgment, which provides that the appellant may pay them and take credit on the judgment. The fairness of each of these claims was established at the trial without objection, and even now their correctness is unchallenged. The surety company was obligated to indemnify and protect respondents, who were under contract to construct a public building for the board of regents of the university, and they must be held aware that, in such cases, respondents were under a bond, according to Rem. Code, § 4326, for the "faithful performance of their work and the full protection of the state against mechanics' and other liens: . . ."

(5) "The surety should be credited with the amount of Hogart's counterclaim."

This refers to the counterclaim of $3,873.78, alleged in Hogart's answer, and involves a question of fact, upon which a lot of testimony was submitted. An examination of it convinces us that it is not established by a preponderance of the evidence, other than the $318.07 allowed by the trial court, to which extent the judgment is less than it otherwise would be.

Judgment affirmed.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur.