[No. 21744.   Department Two.   May 16, 1929.]

JOHN DOWER LUMBER COMPANY, *Respondent*, v. NEW AMSTERDAM CASUALTY COMPANY, *Appellant*.[1]

*W. A. Funk & Son,* for appellant.

*O. L. Boose* and *Grady & Velikanje,* for respondent.

PARKER, J.—The plaintiff lumber company seeks recovery upon a bond executed by George E. Scott, as principal, and the defendant casualty company, as surety, to secure the performance by Scott of a well-drilling contract entered into between him and the city of Sunnyside; and also to secure payment of laborers and all persons supplying him with materials and supplies for the carrying on of the work of the contract,

[1]Reported in 277 Pac. 696.

as prescribed by Rem. Comp. Stat., § 1159. Trial upon the merits in the superior court for Yakima county, sitting without a jury, resulted in findings and judgment awarding recovery to the lumber company in the sum of $758.88, attorney's fees and costs against the casualty company, from which it has appealed to this court.

On August 26, 1925, Scott entered into a contract with the city of Sunnyside by the terms of which he was to drill and construct a well for the city. The following are the only provisions of the contract we need here particularly notice:

"The price for such sinking and construction of city well to be the sum of $8 per foot, for the full depth of said well, not to exceed 1,000 feet. . . . The construction of said well shall be according to the plans and specifications prepared by the city engineer, to which reference is hereby made and considered as a part of this contract. . . ."

The specifications attached to, and made a part of, the contract, read in part as follows:

"The work herein specified to be done under the direction of the city council. . . . The well shall be drilled in a workmanlike manner; bore to be straight and of such width as will permit the installation of a twelve-inch casing to bed rock which is estimated to be about two hundred feet. The contractor shall be required to drill the well to the depth required by the city council, which depth will not exceed 1,000 feet. . . ."

To secure the faithful performance of the contract, and also to secure payment of laborers and materialmen and all persons supplying Scott with materials and supplies for the carrying on of the contract, Scott, as principal, and the casualty company, as surety, executed a bond to the city as prescribed by Rem. Comp. Stat., § 1159.

The work progressed until the latter part of August in 1927, when the well had reached the depth of 1,000 feet. On August 24, 1927, at a meeting of the city council, proceedings were had and recorded as follows:

"The meeting being called to meet with George E. Scott, the contractor on the city well and he being present, he was called upon, and stated that he had completed his present contract, being down to the 1,000-foot level, but without getting water. After a discussion, a motion was made that the city draw up another contract for an additional twenty-nine feet at the price of $17 per foot. Mr. Scott agreeing to this, the city attorney was instructed to draw up the contract and the mayor and city clerk were authorized to execute the same."

A short time thereafter, it appeared that the well had not been drilled straight, and, in order for it to be successfully drilled deeper, it became necessary to straighten the bore by reaming. Considering this condition, the city council, at a meeting held on November 30, 1927, took action and made record thereof as follows:

"It was moved and carried that the mayor and attorney draw up a new contract for George E. Scott; that he get the well in proper condition to resume drilling, including reaming, and to pay Scott on the following plan: $20 a day for the use of machinery, $15 a day for labor, $5 a day for incidentals, such as fuel, and so forth."

There is no other written evidence of any nature pointing to acceptance by the council of the 1,000-foot bore as completed according to the original contract. Nor is there any written evidence indicating the acceptance by the council of any subsequently required work looking to the straightening of the bore or the deepening of the well beyond the 1,000-foot level.

On February 13, 1928, the lumber company presented to, and filed with, the city council, its notice of claim against the casualty company, as surety on Scott's construction bond given in connection with the original contract, the lumber company claiming to have furnished to Scott materials for the carrying on of the work of that contract, and which were actually used in carrying on that work, of the claimed value of $845.76; the lumber company, at the same time, giving to the casualty company the same notice. The trial court, as we have noticed, awarded to the lumber company judgment in the sum of $758.88 against the casualty company. This lessening of the lumber company's claim was the result of the trial court confining its award to materials furnished by the lumber company for the carrying on of the original contract only; those being the only materials for the payment of which the casualty company was liable upon its bond.

The principal contention made in behalf of the casualty company is that the city council, on August 24, 1927, accepted the work under the thousand-foot contract as completed according to that contract, and, in any event, that the city council, on November 30, 1927, so accepted the work under that contract, as evidenced by the above quoted records of the council's actions on those days; and there being more than thirty days expiring thereafter before the presentation and filing of the claim of the lumber company on February 13, 1928, such presentation and filing came too late to perfect the lumber company's claim against the casualty company.

We are unable to see any evidence of acceptance by the council in its recorded action of August 24, 1927, of the work under the original contract. That action seems to us to mean nothing more than an evidencing of the council's intent to proceed with the drilling of

the well deeper because of the failure to procure water at the 1,000-foot level. Nor are we able to see any evidence of acceptance by the council in its recorded action of November 30, 1927. That action of the council, instead of indicating acceptance, it seems to us, evidences the council's view that the original contract was not completed in workmanlike manner as contemplated by that contract, since it had, at that time, been found, and the council then recognized, that the bore was not straight so as to render further deepening of it practical without straightening.

Rem. Comp. Stat., § 1161, giving laborers and materialmen right of action upon bonds of this character, gives such claimants such right of action upon their presenting and filing notice of claim for labor or material

". . . within thirty (30) days from and after the completion of the contract with an acceptance of the work by the affirmative action of the . . . council, . . . ."

Some contention is made in this connection rested upon the theory that the evidence shows, by general talk at the two council meetings above noticed, an agreement or understanding on the part of the councilmen that the drilling of the well down to the 1,000-foot level should then be considered as completed according to contract, and accepted as such. There is some evidence indicating some such general understanding on the part of the councilmen; but we are of the opinion that such understanding was not such as to call for the holding that there was then "an acceptance of the work by the affirmative action of the council," as contemplated by the above quoted language of Rem. Comp. Stat., § 1161. Counsel for the casualty company cite and rely principally upon our decisions in *McGowan Bros. Hardware Co. v. Fidelity & Deposit*

*Co.,* 84 Wash. 470; 147 Pac. 44; and *Denny-Renton Clay, etc., Co. v. National Surety Co.,* 93 Wash. 103, 160 Pac. 1. Those decisions, we think, are not controlling here. They involved a clear written acceptance by an architect or engineer who had unqualified authority to make such an acceptance. We conclude that the work of the contract secured by the bond was not accepted by the city more than thirty days prior to the presentation and filing of the lumber company's claim, as required by Rem. Comp. Stat., § 1161, above quoted. Indeed, it seems plain to us that the record fails to show any acceptance of the work, as completed according to contract, even up to the time of the filing and presentation of the lumber company's claim.

Further contention is made in behalf of the casualty company rested upon the theory that, about the last of August or the first of September, 1927, the manager of the lumber company consented to the city's paying Scott, upon his original contract, $2,400, the lumber company then receiving, by direction of Scott, $400 thereof. The evidence is in sharp conflict touching the question of the manager of the lumber company consenting to the city so paying to Scott $2,000. The trial court did not make any specific findings touching this question; but, in orally deciding the case, expressed the view that the weight of evidence was that the manager of the lumber company did consent to this payment; the court holding, however, that the casualty company was not legally prejudiced thereby. We do not find in the contract any provision for the city withholding any specified percentage of the contract price for the benefit of either itself, the laborers, the materialmen or the casualty company as surety. The nearest the contract comes to making any such provision is the following language found therein:

"Second party [Scott] to be paid for such construction in warrants of said city, as the work progresses, and as designated by the city engineer; but in case of final default on the part of the second party, in the fulfillment of his contract and undertaking, the said partial payments to be returned to first party [city], and in such case their amount to be a charge against the bond of second party hereinafter provided for."

Thus, we think it is rendered plain that no legal right of the casualty company, as surety, was impaired by the making of this payment to Scott by the city. We have several times held, under varying circumstances, that payments made to a contractor upon a construction contract must work prejudice, in some form, to the surety upon the bond given for the benefit of laborers and materialmen before such surety will be heard to complain of the making of such payment. *Leghorn v. Nydell*, 39 Wash. 17, 80 Pac. 833; *Monro v. National Surety Co.*, 47 Wash. 488, 92 Pac. 280; *Manhattan Co. v. United States Fid. & Guar. Co.*, 77 Wash. 405, 137 Pac. 1003; *Finne v. Maryland Casualty Co.*, 102 Wash. 651, 173 Pac. 501.

We conclude that the judgment must be affirmed. It is so ordered.

MITCHELL, C. J., MAIN, MILLARD, and FRENCH, JJ., concur.