[No. 24604. Department Two. October 23, 1933.]

THE CITY OF TACOMA, *Respondent,* v. RUSSELL C. PETERSON *et al., Defendants,* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, *Appellant,* COMMERCIAL CASUALTY INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 25 P. (2d) 1034.

622

*Wright & Catlett*, for appellant.

*W. W. Mount, John E. Gallagher*, and *Bartlett Rummel*, for respondent City of Tacoma.

*Allen, Froude, Hilen & Askren*, for respondent Commercial Casualty Insurance Company.

TOLMAN, J.—This case was heretofore in this court on an appeal by the plaintiff from a judgment of dismissal. The judgment then appealed from was reversed as to the second cause of action, upon the ground that the plaintiff had made a *prima facie* case, and the trial court was directed to proceed with the trial. *Tacoma v. Peterson*, 165 Wash. 461, 5 P. (2d) 1022.

Upon the going down of the remittitur, the case was brought on for trial before the court, sitting without a jury. By stipulation, the statement of facts embracing all of the evidence relating to the present issues which was offered by the city on the first trial was introduced as its case in chief. Evidence was introduced by the defendants seeking to overcome the *prima facie* case thus made, and also to charge the additional defendants in the event that Peterson and his surety were held liable to the city. The trial court found in favor of the city as against Peterson and his surety

and in favor of the additional defendants (except the contractor Torkelson), and from the judgment against it and granting relief over only as against the additional defendant Torkelson, the defendant Indemnity Insurance Company of North America has appealed.

We refrain from a restatement of the facts as shown in our former decision. It is sufficient for present purposes to say that the gist of that decision lies in what we now quote:

"Counsel for respondents contend that, in disbursing money under this contract, Mr. Peterson was not performing a ministerial function, but was exercising his judgment or discretion, and that the same rule should apply in passing upon the second cause of action and the evidence introduced pursuant thereto as we have held applicable to the first cause of action. The distinction, however, is clear. The money for engineering and other expense was due to the city from Mr. Torkelson under the very contract pursuant to which Mr. Peterson was drawing warrants in favor of Mr. Torkelson's assignee. The contract is plain and unambiguous and, in so far as Mr. Peterson's duties were concerned (referring to the question here presented), called for the exercise of neither judgment nor discretion, but for ministerial functions only."

It will be observed that the salient and governing facts are that the money was actually due to the city under the terms of the contract which governed Peterson as controller in drawing the warrants; that it was the clear duty of Peterson to withhold or deduct the engineering charges due to the city; that there was nothing in the situation calling for the exercise of either judgment or discretion on the part of Peterson, and that his duties in that respect were ministerial only. Nothing contained in the record now before us changes this situation in the slightest degree, and under the rule of the former decision, the judgment in

favor of the city and against Peterson and his surety must be affirmed.

The second phase of the case presents a more difficult question. Appellant contends with force and vigor that, if it must pay to the city the money which the city's controller should have withheld from the contractor, then the contractor and his surety should respond to it. The trial court held with it as to the contractor, but refused to so hold the contractor's surety.

Appellant, as a basis for so holding the contractor's surety, undertook to, and did, trace the wrongful overpayment into the contract work: first, by showing that the final progress estimate of $14,698.33, from which the deduction for engineering work by the city should have been made, was paid to Torkelson's assignee, the bank which had financed him in the work; that, thereafter, the bank deducted its advances to Torkelson which had gone into the work and paid the excess of $3,676.95 to Torkelson; and second, that, thereafter, Torkelson paid to labor and material men, and in like costs of the performance of the work, a sum equal to, if not in fact exceeding, the sum he so received from the bank out of the final progress estimate. After such payments were made, there were left unpaid claims against the contractor almost exactly equalling the retained percentage in the hands of the city. All such claims were presented to the city and paid by it out of the retained percentages.

Having so traced the money wrongfully paid to the contractor into the work, appellant draws the conclusion that the contractor's surety was not injured by the wrongful overpayment; and that, since all of that payment went to discharge claims for which the bond would have been liable, the surety should now reimburse it. To support this position, it cites: *Leghorn*

*v. Nydell,* 39 Wash. 17, 80 Pac. 833; *Monro v. National Surety Co.,* 47 Wash. 488, 92 Pac. 280; *Black Masonry & Contracting Co. v. National Surety Co.,* 61 Wash. 471, 112 Pac. 517; *Manhattan Co. v. United States Fidelity & Guaranty Co.,* 77 Wash. 405, 137 Pac. 1003; *Finne v. Maryland Casualty Co.,* 102 Wash. 651, 173 Pac. 501; *Puget Sound Bridge & Dredging Co. v. Jahn & Bressi,* 148 Wash. 37, 268 Pac. 169; and *John Dower Lumber Co. v. New Amsterdam Casualty Co.,* 152 Wash. 186, 277 Pac. 696. We quote from the syllabi of the first of the cited cases:

"In an action upon an indemnity bond guaranteeing a building contract, the surety cannot complain of a payment made by the owner to the contractor prior to its falling due, when the same was deducted from the last payment due and benefited rather than prejudiced the surety."

All of the other cases cited, except two, announce the same doctrine, although some emphasize the necessity of such an advance to prevent or to pay off liens. The two excepted cases are not in point, and neither is at all helpful here.

The rule, then, is that a surety cannot complain of an advance made while the work is in progress which assists the contractor to perform and which is deducted at or before the time of the last payment. Such is not the situation here. The wrongful payment was here made, not to assist the contractor in performing, but after the work had been completed, and no purpose beneficial to the surety was, or could be, served.

The respondent surety, upon the other hand, urges that it is a well-settled rule at law that, when the rights of a surety are involved, the obligee must deduct from the payments any sum owing to it, otherwise the surety will be discharged, citing *Wood v. Brown,* 104 Fed. 203; *Commonwealth v. Vanderslice,* 8 Serg. &

Raw. (Pa.) 451; *Clow v. Derby Coal Co.,* 98 Pa. 432, and a considerable number of cases from other courts that seem to so hold.

While we are satisfied that this is the general rule and the correct rule to apply in this case, we have another reason for applying it, and that is that all men are, in law, presumed to be able to meet their just obligations until the contrary is shown. Torkelson by his contract was bound to pay all of the costs and expenses of performing the work. He did pay all by using this money wrongfully advanced to him. If the wrongful advance had not been made, presumably he would have obtained money from other sources and still have met all of his obligations. The failure to show that Torkelson was insolvent at the time or so financially embarrassed that he could not have paid from his own resources is fatal to appellant's case. Without any evidence upon that subject, it must be presumed that Torkelson was able to and would have discharged his obligations had he not received the wrongful payment.

The judgment is affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.