**UNITED STATES v. DUBY et al.**

**No. 13138.**

United States Court of Appeals
Ninth Circuit.

Jan. 30, 1952.

J. Charles Dennis, U. S. Atty., John E. Belcher, Asst. U. S. Atty., Seattle, Wash., Cornelius Peck, Atty., Dept. of Justice, Washington, D. C., for appellant.

Skeel, McKelvy, Henke, Evenson & Uhlmann and Willard E. Skeel, Seattle, Wash., for appellee.

Before STEPHENS, HEALY, and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

The district court dismissed the complaint of the United States against the defendants,

and the United States appealed from the judgment entered thereon as to both defendants, Pat Duby and Continental Casualty Company, but appellant has requested that the appeal as to Duby be dismissed because he has been discharged in bankruptcy. We hereby grant the motion, and now proceed with the appeal as to Continental Casualty Company.

The complaint is for damages alleged to arise out of the following basic facts: The United States through the Civil Aeronautics Administrator, a department of the Department of Commerce, contracted with Duby to construct certain concrete check dams and a twin box culvert at the Seattle-Tacoma Airport for $6,602.70, to be paid in progress payments. The work was to be completed in thirty days, but because of some changes the contract completion time was extended sixteen days, and the contract price was raised to $7,562.70. The work was not completed within the contract time, but the government did not exercise its right to take the work over but permitted the contractor, as it had the right to do, to proceed and the work was completed one hundred thirty-three days after the expiration of the contract time. The government claimed liquidated damages of $20 for each day over time in accordance with the contract. No progress payments had been earned or paid within the contract completion time but thereafter progress payments were made as they were earned without deduction of the accrued liquidated damages, until the final payment, from which $979.82 was withheld.

Continental Casualty Company was the surety on the performance bond and also on a separate and independent labor and material bond.

■ The first point raised on appeal is that the court erred in finding that the surety company had no notice of the government's intention to claim liquidated damages, thus depriving Continental from opportunity to file a claim in the Duby bankruptcy proceedings. We see no clear error in this finding, but even so, the state of the record would not support a conclusion therefrom beneficial to appellee surety for the reason that the bankruptcy proceedings

were introduced into evidence and they seem, on their face, to show that nothing out of the estate would have been distributed to Continental, had it filed a claim. As will be more clearly shown later herein, a compensated surety is not relieved of responsibility by the act of the principal, unless the act prejudices the surety, and then only to the extent of the prejudice if it is reasonably discoverable.

The more crucial point in the appeal is whether the surety was released *pro tanto*, wholly, or at all, by the act of the principal in making the progress payments in full without deducting the accrued liquidated damage sums from the payments. Since the contract completion period had expired before the first progress payment had accrued, and the total payments were $7,562.-70, and the total accrued damages claimed amounted to $2,660.00, it is obvious that all of the claimed accrued damages would have been satisfied had the principal deducted them from the payments as they fell due.

■■ We look to the Washington state law, Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and find that an act of the principal which does not prejudice the surety does not release the surety. Therefore, unless the failure to deduct the accrued damages prejudices the surety, it is not released. In Leghorn v. Nydell, 1905, 39 Wash. 17, 80 P. 833, and Monro v. Nat'l Surety Co., 1907, 47 Wash. 488, 92 P. 280, 282, there were advances made on the progress payments but the advances were deducted from the progress payments when the latter were made. Held: no prejudice resulted to the surety. In the Monro case it is said that "* * * in no event could the premature payments constitute a defense beyond the amount of the advancements made, and not at all unless the payments operated to the prejudice of the bonding company." This is according to the *pro tanto* doctrine. Again, in City of Tacoma v. Peterson, 1933, 174 Wash. 621, 25 P.2d 1034, 1035, the Washington State Supreme Court reviewed the cases and deducted the following rule:

"The rule then is that a surety cannot complain of an advance made while the work is in progress which assists

the contractor to perform and which is deducted at or before the time of the last payment. Such is not the situation here. The wrongful payment was here made, not to assist the contractor in performing, but after the work had been completed, and no purpose beneficial to the surety was or could be served.

"The respondent surety, upon the other hand [and the court approves the principle], urges that it is a well-settled rule at law that when the *rights of a surety* are involved the obligee must deduct from the payments any sum owing to it, otherwise the surety will be discharged; * * *." [Emphasis ours.] The court cited Wood v. Brown, 8 Cir., 1900, 104 F. 203, and two Pennsylvania state cases. Wood v. Brown is authority for the principle that the discharge is only to the extent of the prejudice. We adhere to this holding. We have emphasized the words "rights of a surety" for the purpose of indicating clearly that the rule quoted in the first preceding quoted paragraph is not modified by the second quoted paragraph, unless the *rights of the surety* are affected; or in other words, unless the surety has been prejudiced.

The district court in the instant case found, upon sufficient evidence, that the delay did cause damage to the government and the damage under the contract was for $20 for each day over the contract time, but denied any relief because the accrued liquidated damages were not deducted from the sums due on the progress payments. We think the court was wrong in holding, as it seems to have done, that failure to deduct the accrued damages from the payment vitiated the surety liability or contract. Instead, the court should have considered all appropriate evidence as to whether the payment of the full progress sums actually prejudiced the surety, and to what extent.[1]

It appears from the record that only a part of the completion payment was withheld from the contractor. If the government intended to hold the surety for liquidated damages, the whole of the completion payment should have been withheld, unless the part paid was subject to liens. If, in a retrial of the case, the surety is held liable for the liquidated damages, this point should be taken into consideration so that any sum paid the contractor after completion of the work should be credited to the surety.

As to whether, in the circumstances of this case, the contractor was in law released upon completion and acceptance of the work and whether, if he was released,

1. 3 Corbin on Contracts § 692: "Nonpayment of an Instalment on a Construction or Service Contract.

"There is a special factor to be considered in the case of a building contract, or any other contract the financing of which requires a progressive expenditure in the course of performance. In these cases, one reason for providing for instalment payments as construction proceeds is to supply the funds necessary for the agreed performance: and failure to pay one or more instalments is more likely to cause inconvenience and difficulty to the building contractor. Therefore, a failure to make one of the progress payments, even though the contract is not divisible into pairs of separate equivalents and the instalment unpaid is only a small part of the whole consideration, is more likely to justify suspension of performance by the builder, or even the total renunciation of further duty. There are many cases holding that nonpayment has

justified such a suspension or renunciation."

See, e. g., Phillips & Colby Construction Co. v. Seymour, 1875, 91 U.S. 646, 23 L.Ed. 341; Knotts v. Clark Construction Co., 7 Cir., 1917, 249 F. 181; Michigan Yacht & Power Co. v. Busch, 6 Cir., 1906, 143 F. 929; Beltinck v. Tacoma Theater Co., 1910, 61 Wash. 132, 111 P. 1045; Guerini Stone Co. v. P. J. Carlin Construction Co., 1919, 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 275.

"The legal effect of a nonpayment must be considered in the light of its practical effects upon performance by the builder, especially those effects that the debtor had reason to know." 3 Corbin on Contracts § 692.

There is also a presumption " * * * that all men are, in law, presumed to be able to meet their just obligations until the contrary is shown." City of Tacoma v. Peterson, 1933, 174 Wash. 621, 25 P. 2d 1034, 1035.

the surety was thereby released as surety, we make no expression, since the court made no specific findings or conclusions on the subject, and since these problems may well be affected by additional evidence and findings in a retrial of the case.

We note that the court found that the contractor's encounter with quicksand and excessive rainfall "rendered completion of the work within the time limited under the contract most difficult and burdensome", and that the presence of the quicksand was unknown to either of the contracting parties. There was, however, no finding or conclusion as to whether the presence of quicksand would have been discovered if reasonable investigation had been made. Whether such a suggested finding may or may not be material we do not decide.

Reversed and remanded.